IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| ROBERT E. GREEN and | : | |
| JANICE W. GREEN, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | 5:15-CV-161 (CAR) |
| WELLS FARGO BANK, N.A., | : | |
| successor by merger to WACHOVIA | : | |
| BANK, N.A., | : | |
| | : | |
| Defendant. | : | |
| _____ | : | |

## ORDER ON DEFENDANT'S MOTION TO DISMISS

Before the Court is Defendant Wells Fargo Bank, N.A., successor by merger to Wachovia Bank, N.A.'s Motion to Dismiss [Doc. 16] Plaintiffs Robert E. Green and Janice W. Green's Second Amended Complaint [Doc. 18] for damages arising from breach of contract. The Motion is fully briefed and ripe for adjudication. Upon review of the pleadings, the arguments of counsel, and the relevant legal authorities, the Court finds Plaintiffs' Complaint [Doc. 18] fails to state a claim for which relief may be granted. Therefore, Defendant's Motion to Dismiss is hereby **GRANTED** [Doc. 16].

**LEGAL STANDARD**

On a motion to dismiss, the Court must accept as true all well-pleaded facts in a plaintiff's complaint.[1]   To avoid dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain specific factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[2]   A claim is plausible where the plaintiff alleges factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[3]   The plausibility standard requires that a plaintiff allege sufficient facts "to raise a reasonable expectation that discovery will reveal evidence" that supports a plaintiff's claims.[4]

**BACKGROUND**

The facts in the light most favorable to Plaintiffs, the nonmoving party, are as follows.  In the early 1990s, Plaintiff Robert Green founded Witten Technologies, Inc. ("the Company") to commercialize and patent technology in three-dimensional underground imaging.  In 2001, with the help of Defendant's officers, John Raymond, Mark Griffis, and Angie Hall, Plaintiff Robert Green set up a Corporate Line of Credit ("LOC") with Defendant. The LOC was memorialized by a series of documents

---

[1] *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009).
[2] *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).
[3] *Id.*
[4] *Twombly*, 550 U.S. at 556.

executed between July 2001 and January 2003. Defendant required the LOC to be underwritten by cash and clean letters of credit ("Prime Collateral"). Plaintiffs Robert Green and Janice Green claim that they "provided part of that Prime Collateral which was the consideration for the LOC" by executing a Personal Equity Line of Credit ("PELOC") with the Defendant on January 24, 2001.[5]

By 2003, the LOC was underwritten by seven guarantors, including Plaintiff Robert Green, all posting cash, property or bank letters of credit as collateral totaling $1.7 million.[6] The Defendant renewed the LOC every year from 2001 through 2007, and during that period, "Defendant never expressed any concerns" to Plaintiff Robert Green, "regarding the performance or security with the Company accounts or the LOC."[7] Rather, Defendant expressed its desire to maintain its relationship with the Company.[8]

In 2007, Plaintiff Robert Green discovered unauthorized issuance of stock warrants to friends of the other Officers, Directors, and a shareholder—Howard White. In an attempt to remedy the unauthorized transactions, Plaintiff Robert Green planned to remove the officer responsible—Brian Hurse.[9] The other Officers and Directors disagreed with the plan to remove Hurse. They decided to utilize their personal

---

[5] Second Amended Comp. [Doc. 18] at 4.

[6] *Id*. at 4-5.

[7] *Id*. at 5-6.

[8] *Id*. at 6.

[9] *Id*. at 8.

relationships with Defendant to take control of the Company, as Hurse was a former officer of Defendant.[10]

In September 2007, Defendant's Officers (Griffis, Raymond, and, possibly, Gallardo) and the other Officers and Directors of the Company held a private meeting regarding the Company's LOC without Plaintiff Robert Green, and Defendant knowingly excluded Plaintiff Robert Green from discussions of the Company's confidential financial matters.[11] Then on October 4, 2007, Defendant's Officer, Griffis, issued a letter to Plaintiff Robert Green, the other Officers, Directors, and shareholder White terminating the LOC and demanding payment of the outstanding balance by November 1, 2007.[12]

The abrupt termination of the LOC blocked Plaintiff Robert Green's ability to financially operate the Company and was used by the other Officers, Directors, and shareholder White to force Plaintiff Robert Green out of the Company. Defendant participated in this event despite having knowledge that Plaintiffs' ability to repay the balance due under the PELOC was highly contingent upon Plaintiff Robert Green's position with the Company.[13]

Instead of reducing the balance of the LOC with funds from the Company's bank accounts, Defendant facilitated the other Officers, Directors, and shareholder White in

---

[10] *Id*. at 9.
[11] *Id*. at 9.
[12] *Id* at 10.
[13] *Id*. at 11-12.

4

moving the Company's funds to First Guaranty Bank and recouped the LOC money solely from the guarantors.[14] Defendant's actions in utilizing the collateral to repay the LOC helped the other Officers and Directors to successfully wipe away over $900,000 of Company liability and took "the clean slate to another bank effectively absconding with the Company benefits for themselves."[15]

On February 21, 2008, Plaintiff Robert Green was informed that he was terminated at the January 25, 2008 board meeting.[16] Following his termination, Plaintiffs were forced to pay the interest on the PELOC that they provided as collateral for the LOC, even though Defendant "knew the Plaintiffs' PELOC was highly contingent upon [Plaintiff Robert Green's] position with the Company.[17] Moreover, Plaintiffs were also unable to stay current on the PELOC because they had loaned an additional $250,000 to the Company for business development.[18] Ultimately, Plaintiffs argue that the Board's actions, aided by Defendant, drove the Company into bankruptcy and financially destroyed the Plaintiffs.[19]

---

[14] *Id*. at 13,15.
[15] *Id*. at 15.
[16] *Id*. at 14.
[17] *Id*. at 15, 16.
[18] *Id*. at 16.
[19] *Id*.

## DISCUSSION

There are two basic issues in this case. The first is whether Plaintiffs have standing to bring this action against Defendant. The second is, even if Plaintiffs have standing, did Defendant breach the LOC and, in turn, breach the PELOC?

However, before the Court addresses these issues, it must first decide the law that should be applied to the contracts at issue. Because this Court has jurisdiction of this suit based on diversity, the rights of these parties are governed by Georgia law.[20] Generally, a contract is interpreted under Georgia law, unless the contract has a choice of law provision.[21]

Here, there are two contracts at issue—the PELOC and LOC.  There is no dispute between the parties that Georgia law applies to the PELOC. However, in their Response Brief, Plaintiffs have cited Georgia law in regard to the LOC, but Defendant asserts that Florida law should apply to the LOC. In the promissory note, the LOC has a choice of law provision that states that it should be "governed by and construed under the laws

---

[20] *Erie R.R. Co. v. Tompkins,* 304 U.S. 64 (1938) (a federal court sitting in diversity applies state substantive law).

[21] *Convergys Corp. v. Keener*, 276 Ga. 808, 811 n. 1. (2003) ("([C]ontracts) are to be governed as to their nature, validity, and interpretation by the law of the place where they were made, except where it appears from the contract itself that it is to be performed in a State other than that in which it was made, in which case … the laws of that sister State will be applied.") (citations omitted)

of the state named in the Bank's address," which is Jacksonville, Florida.[22]  Therefore, the Court agrees that Florida law should apply to the LOC.

## I.        Standing

There is no question that Plaintiffs have standing to sue under the PELOC; Plaintiffs and Defendant were the named parties on the contract. Defendant, however, argues that Plaintiffs do not have standing to sue under the LOC for two reasons: First, because although Plaintiff Robert Green signed the LOC, he did so in his official capacity as president of the Company; and second because Plaintiff Green was not a third-party beneficiary to the contract. Plaintiff argues that although there is no reference to Plaintiffs as personal beneficiaries in the plain terms of the LOC, they offered partial collateral to secure the loan by taking out the PELOC, and, therefore, were third party beneficiaries to the contract. The Court disagrees.

Under Florida law, a person not a party to a contract may sue for breach of the contract where the contract provisions clearly establish the parties' intent to create a right primarily and directly benefiting the third party.[23] A party is an intended beneficiary only if the parties to the contract clearly express, or the contract itself

---

[22] [Doc. 19-2].
[23] *Health Application Systems, Inc. v. Hartford Life and Accident Insurance Company*, 381 So.2d 294 (Fla. Dist. Ct. App. 1980)

expresses, an intent to primarily and directly benefit the third party.[24] And the intent of both parties is "the key" to the analysis.[25]

After reviewing the parties' arguments and relevant law, the Court is unconvinced that Plaintiffs were intended beneficiaries of the LOC. There is nothing in the LOC's provisions showing a clear intent by the parties to benefit Plaintiffs; in fact, only Plaintiff Robert Green signed the LOC, and he signed it in his capacity as president of the Company. Plaintiffs' reliance on Georgia law that a party providing the consideration for a contract can be third-party beneficiary[26] is misguided.  Florida law controls, and under Florida law, "the test is[ ] not that the promisee is liable to the third person, or that there is some privity between them or that some consideration moved from the third person, but that the parties to the contract intended that a third person should be benefitted by the contract."[27] However, even if assuming arguendo, Plaintiffs were intended beneficiaries of the LOC, they still have not pled sufficient factual allegations to state a claim for breach of a third party beneficiary contract.[28]

---

[24] *Caretta Trucking, Inc. v. Cheoy Lee Shipyards, Ltd.*, 647 So. 2d 1028, 1030-31 (Fla. Dist. Ct. App. 1994)

[25] *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 981-82 (11th Cir. 2005).

[26] *People Bank of Calhoun et al. v. Harry L. Winter Inc.*, 161 Ga. 898, 906 (1926) ( noting that if "the contract does not state, in express terms, to whom the promise is made, the law declares that it is made to the person whom proceeded the consideration by which it is supported").

[27] *Id*. (quoting *Marianna Lime Prods. Co. v. McKay*, 109 Fla. 275, 147 So. 264, 265 (1933) (emphasis added).

[28] Although the Court notes that intent may be inferred by the pre-contract and post-contract actions of the parties, if the contract does not expressly provide for the third party beneficiary, then the litigant must clearly show that both parties to the contract intended its beneficiary status. *See Nova Info. Sys., Inc. v. Greenwich Ins. Co.*, 365 F.3d 996, 1003 (11th Cir. 2004). *See also*

## II.   Breach of Contract

Plaintiffs allege that Defendant breached the LOC by failing to renew the loan, and in doing so breached the PELOC. The Court first addresses whether Plaintiffs have alleged sufficient facts to maintain their claim Defendant breached the LOC, and then addresses Plaintiffs' claims under the PELOC.

### A.   <u>The LOC</u>

Generally, to maintain a cause of action for breach of a third party beneficiary contract under Florida law, "the party asserting the third party beneficiary status must prove (1) the existence of the contract; (2) clear or manifest intent of the parties that the contract primarily and directly benefits the third party; (3) breach of a contact by a contracting party; and (4) damages to the third-party resulting from the breach."[29] The Court finds that even assuming Plaintiffs could show they had standing as third-party beneficiaries under the LOC, they simply have not pled sufficient facts to show a breach of the terms of the LOC.

Plaintiffs claim that Defendant violated its duties and obligations under the LOC. However, Defendant contends that the LOC expired by its own terms. As such, Defendant was under no obligation to renew and within its rights under the contract to

---

*Caretta Trucking, Inc. v. Cheoy Lee Shipyards, Ltd.,* 647 So.2d 1028, 1031 (Fla. Dist. Ct. App.1994) ("It is insufficient to show that only one party unilaterally intended to benefit the third party").
[29] *Steadfast Ins. Co. v. Corp. Prot. Sec. Grp., Inc.,* 554 F. Supp. 2d 1335, 1338 (S.D. Fla. 2008) (citing *Jenne v. Church & Tower, Inc.,* 814 So.2d 522, 524 (Fla. Dist. Ct. App. 2002).

seek payment upon demand. The Court agrees.  Plaintiffs have not alleged which terms were breached when Defendant declined to renew the LOC in 2007.

Plaintiffs assert in their Complaint that Defendant "expressed its desire to continue the relationship with the Company" when it renewed the LOC in 2007, and it did not express "any concerns regarding the Company."[30] However, as Defendant contends, these alleged attestations of an ongoing relationship are merely parol evidence and cannot be used to alter the plain terms of the contract—plain terms that show that the LOC expired by its own terms on June 30, 2003, "unless renewed or extended by [Defendant]."[31] Moreover, Plaintiffs concede in their Brief that they are "not attempt[ing] to use parol evidence."[32] Therefore, because Plaintiffs fail to allege which terms of the LOC were breached by Defendant's non-renewal of the LOC in 2007, the Court finds that Plaintiffs have failed to state a plausible third-party breach of contract claim under the LOC.

B. PELOC

Along with their third party claims, Plaintiffs argue that Defendant breached the PELOC in three ways: 1) failing to renew the LOC; 2) aiding and abetting; and 3) violating the duty of good faith and fair dealing. However, for many of the same

---

[30] Second Amended Comp. [Doc. 18] at 7, 8.
[31] [Doc. 17-5] at 2.
[32] Pls' Resp., [Doc. 19] at 14.

reasons as discussed above, Plaintiffs have failed to state a claim for breach of the PELOC.

First, Plaintiffs claim that the PELOC was breached when Defendant failed to renew the LOC. In their Complaint, Plaintiffs assert that because the PELOC was executed "in order to partially secure and guarantee the LOC," when Defendant failed to renew the LOC, "it breached its obligations under the PELOC."[33] However, as discussed above Plaintiffs were not parties to the LOC, and even if they were third party beneficiaries, they have not alleged how Defendant's actions in failing to renew constituted a breach of the LOC.  Moreover, Plaintiffs do not point to any terms in the PELOC that reference the LOC, nor do they purport to allege any "'unwritten cross default provisions' between the PELOC and the LOC" that were breached.[34] Therefore, Plaintiffs have simply failed to allege any terms of the PELOC that were breached when Defendant did not renew the LOC, and thus, these claims are dismissed.[35]

Second, Plaintiffs claim Defendant is liable for aiding and abetting the Board's "improper, tortious ouster of Plaintiff R. Green from the Company" and that this was a breach of Defendant's obligations under the PELOC.[36]  Although Plaintiffs suggest that

---

[33] Second Amended Comp. [Doc. 18] at 20.
[34] [Doc. 19] at 14.
[35] *See Twombly*, 550 U.S. at  570 (noting that because "the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed.")
[36] [Doc. 19] at 15.

"aiding and abetting improper conduct "is [a] long established and well known" claim in Georgia, imposing liability on lenders, the Court is unconvinced.[37]

In an attempt to clarify the claims in their Complaint, Plaintiffs concede in their Brief that they "**do not** allege that Defendant aided and abetted a breach of contract claim."[38] Moreover, Defendant contends, to the extent Defendant engaged in a meeting regarding the LOC without Plaintiff Robert Green being present, Plaintiffs cannot make out a tortious interference with contractual or business relations claim either.  In order to make out a tortious interference claim in Georgia, the plaintiff must establish that the defendant is a "stranger" to the business relationship or contract.[39] Here, Defendant is a party to the LOC and therefore is not a stranger either the PELOC or LOC. Thus, Plaintiffs cannot maintain a tortious interference claim either.

Therefore, although Plaintiffs claim that they can make out a claim under "some viable legal theory,"[40] the Court simply cannot ascertain what that theory is.[41] Moreover

---

[37] Plaintiffs point to two cases, both of which sound in aiding and abetting of fraud claims, and one of which is based on California state law and thus holds no precedential value. *Williamson v. Walker*, 187 Ga. 603, 604-05 (1939) (noting Plaintiff's claim that Defendant aided and abetted Plaintiff in persuading his wife to sign loan papers under her name); *First Fed. Sav. & Loan Assn. v. Lehman*, 159 Cal. App. 3d 537, 542-43 (Ct. App. 1984) (noting that fraud actions may be brought for damages incurred from misrepresentations impairing value of real property security).

[38] *Id*. (emphasis in original).

[39] *Renden, Inc. v. Liberty Real Estate Ltd. P'ship III*, 213 Ga. App. 333, 335 (1994).

[40] [Doc. 19] at 15.

[41] *See* Fed.R.Civ.P. 8(a)(2) ("A pleading that states a claim for relief must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief."); *Twombly*, 550 U.S. at 570 (A plaintiff must articulate "enough facts to state a claim to relief that is plausible on its face.")

the Eleventh Circuit has noted that "a court's duty to liberally construe a plaintiff's complaint in the face of a motion to dismiss is not the equivalent of a duty to re-write it for [them]."[42] Therefore, because Plaintiffs have not pled a cognizable claim under applicable State or Federal law, Plaintiffs' general aiding and abetting claim must be dismissed.

Finally, to the extent Plaintiffs seek to make out a breach of the PELOC through a breach of the implied covenant of good faith and fair dealing, Plaintiffs claim must likewise fail. Under Georgia law, every contract implies a covenant of good faith and fair dealing in the contract's performance and enforcement.[43] However, the implied covenant modifies and becomes a part of the provisions of the contract, but the covenant cannot be breached apart from the contract provisions it modifies.[44]  As such, the implied covenant cannot provide an independent basis for liability.[45]

As the Court noted above, because Plaintiffs have failed to allege a sufficient factual basis for a breach of the PELOC or LOC, the Court likewise cannot find a breach of the implied covenant of good faith and fair dealing and must, accordingly, dismiss this claim.

---

[42] *Peterson v. Atlanta Hous. Auth.,* 998 F.2d 904, 912 (11th Cir. 1993).
[43] *WirelessMD v. Healthcare.com Corp.*, 271 Ga. App. 461, 468 (2005).
[44] *Stuart Enterprises Int'l, Inc. v. Peykan, Inc.*, 252 Ga. App. 231, 234 (2001).
[45] *Myung Sung Presbyterian Church, Inc. v. N. Am. Ass'n of Slavic Churches & Ministries, Inc.*, 291 Ga. App. 808, 810 (2008).

**CONCLUSION**

Based on the foregoing, Defendant's Motion to Dismiss [Doc. 16] is **GRANTED**.

Accordingly, Plaintiffs' Second Amended Complaint [Doc. 18] is hereby **dismissed**.

   **SO ORDERED,** this 14th day of December, 2015.

                                    S/ C. Ashley Royal
                                    C. ASHLEY ROYAL, JUDGE
                                    UNITED STATES DISTRICT COURT

14